Oral argument is not to exceed 15 minutes per side. Ms. Coffin for the appellant. Good morning, Ms. Coffin. Good morning. I'm Jennifer Coffin. I'm here today on behalf of Jesse Bailey. I'd like to reserve three minutes of my time. Very well. Thank you. Mr. Bailey is serving a 30-year term of imprisonment for a non-violent, unremarkable crack offense. In denying his motion for a sentence reduction under Section 404 of the First Step Act, a strong remedial statute, the district court placed dispositive weight on one thing, the fact that Mr. Bailey was deemed a career offender under the career offender guideline. It did not mention the 3553A factors, not at all. It did not use language that tracked any purpose of sentencing or from which this court could intuit a purpose of sentencing. It did not say anything to indicate that it considered the need to avoid unwarranted disparities. It did not explain why Mr. Bailey's exemplary post-sentencing conduct, which the Supreme Court has said is highly relevant to several 3553A factors, including the parsimony principle, did not warrant at least some reduction. It is Mr. Bailey's position that the district court's explanation, in its inadequacy and substantive lack of basis, resulted in leaving intact a sentence that is both procedurally and substantively unreasonable. Well, counsel, I believe the district court here was relying upon a prior sentencing hearing of the transcript and the consideration given by the original sentencing judge to the 3553A factors. Is that fair to say what happened here? No, it is not fair to say. The district court did not mention anything about the previous sentencing transcript. We don't know for sure that this different judge considered what the original judge said at sentencing. And even if you go back to the original sentencing transcript, you can see that while the district judge at the time, Judge Phillips, talked about some of the reasons why the sentence was imposed, ultimately the judge said it's because he's a career offender and that's going to serve the purpose of deterrence and protecting the public in the same breath. And so by doing that, by the fact that a different judge clearly relied on the career offender guideline, cannot fairly be said to be the reason why this new judge, who did not mention anything about what the judge said before, and when Mr. Bailey has done all of the things that Judge Phillips wanted him to do by completing drug education and taking programs and having a strong work ethic, basically turning his life around, why we would go back to that original sentencing transcript and assume that the judge today relied on that. You're not challenging the fact that he is a career offender, are you? No, I am not challenging the fact that he would still be deemed a career offender today. And even under the guidelines as they stand now, his sentence range guideline would still be 360 months to life, would it not? That is correct. Yet, that particular guideline happens to be one of the few guidelines today that is demonstrably unsound in the sense that it's not functioning correctly. Judges do not follow it in the large majority of cases. Only, I think, less than a quarter of people who are deemed career offenders are actually sentenced within the range. Most everybody else, almost all the rest, are sentenced below the range. The Commission itself has recognized that the career offender guideline has problems. It has put out data for the courts to use to consider when they're looking at sentencing. This court, in several cases, published opinions and unpublished opinions, has looked at that kind of data when evaluating whether a sentence is substantively unreasonable to say that there is an acute risk in this case that the judge did not adequately consider the need to avoid unwarranted disparities. By saying if most of the people who are sentenced under this guideline get a particular sentence, then why should Mr. Bailey be forced to serve a different sentence? You're saying that what the district court should have done is considered all the 35, 53, and had a variance downward from the guideline range. Is that what you're basically saying should have happened? Mr. Bailey is not saying that the district court was required to vary downward. Mr. Bailey is arguing that the district court was required, in considering the need to avoid unwarranted disparity, to consider what other courts are doing. And the information on that ground is readily available. It's disseminated to the courts. And it's information that this court has considered on its own in deciding whether a sentence is substantively unreasonable. I'm curious, how do you, you know, the government in its 28J letter that came yesterday, or day before, cited United States v. Michael, which was decided on December 9, 2020. How do you distinguish Michael? Michael has many of the similar facts, right? I did not actually respond to that letter, but Michael is, in fact, not the same. And I can tell you that, let me go ahead and tell you that the difference with Michael is that in that case, it was an original sentencing, the court said that the district court, this court said that the district court was not required to consider a study that was not raised, because that study does not have the force of law. It's an unpublished decision, and it was following some language from some other unpublished decisions, saying that the commission's writings do not have the force of law. Mr. Bailey is not arguing that the commission's writings have the force of law. What he's arguing is that the data, the information, the analysis that the commission is doing on behalf of the courts is highly relevant to a statutory factor that the district court is required to consider. That's a different argument, and I would say that Michael doesn't apply to that. It doesn't control what Mr. Bailey is arguing, which is that the information being highly relevant is something that the district court should consider. It seems to me a lot of your argument is really the argument that you'll present to the district court if you get back there. This is really just an inadequate explanation case, is it not? And you're saying you raised certain arguments, the district judge had a duty to address them, he didn't address any of them, and the failure to do so isn't saved by the fact that there was an earlier sentencing, because we don't know if he relied upon it and what he thought about it. Is that sort of the bottom line here? That's the bottom line when it comes to Mr. Bailey's argument about the procedural error here. Yes, that is exactly a perfect summary of the procedural error, and remand would be appropriate on that ground. Mr. Bailey additionally argues, based on this Court's precedence, that it's appropriate for this Court to say when you're looking at a career offender sentence, district courts, we have to worry, especially in the context of the strong remedial statute that the First Step Act, Section 404, district courts should take into account, to look at and take into account commission data showing that the vast majority of people who are deemed career offenders are not actually sentenced within the range. That is what Mr. Bailey is asking, and that under this Court's precedence, in addition to the procedural error, there's also a substantive problem that disparity, the question about whether a sentence avoids unwarranted disparity, as this Court has said, lies at the heart of substantive, reasonable review. And because of that, in a situation like this, where there's no indication at all that the Court considered it, and when the data is so clear that there's a problem with this guideline, that it's the kind of case where that kind of instruction would be appropriate. Was that disparity point argued to the district court? No, it was not specifically argued to the district court. How can we say that the district court abuses discretion and not considering something that wasn't argued? Well, it's done so in other cases. So in Perez-Rodriguez, for example, in Lightning, and I believe in Kruger, these arguments were not made in the district court. Because the question about substantive reasonableness occurs only in the court of appeals. It's not something that gets argued in the district court. I recognize that it would be better for someone to always bring these things to the Court's attention in the district court. But when this Court has on several occasions, and in one occasion in reversing a sentence on the government's request, has looked to this data to conclude that it's not so much that the sentence itself is necessarily substantively unreasonable, but there's an acute risk that because we don't know whether the district court considered this, that there's a risk that it's substantively unreasonable because this information has not, it's not apparent that it's been taken into account. And I also realize there's some overlap with procedural error, but that's the state of this circuit's law. And the Supreme Court, too, I'd like to sort of emphasize that in Kembro, the Supreme Court said that when courts are considering the need to avoid unwarranted disparities under 3553A6, they must take into account what other courts are doing. That's an interpretation by the Supreme Court of that particular provision. And so when that doesn't happen, even though a mistake or someone might not have brought it up in the district court, we're still on direct appeal. For Mr. Bailey, this is his only chance to get this right. And we're talking about a context that it's about giving people an opportunity to have the benefit of a strong remedial statute that is designed to give courts the opportunity to undo deep racial and structural disparity built into the guidelines themselves. This is an opportunity that the district court, it appears to have missed, possibly partly because not everything was presented to the district court. But when this court has, in original sentencing, considered this kind of data, when deciding whether a district court has adequately considered this particular factor, it seems especially appropriate for that to happen here. I'm having trouble with what you're saying the district court should be doing here. It sounds like you're saying the district court needs to convene its own hearing that the sentencing commission has presumably done to come up with a guideline and do its own kind of mini junior varsity sentencing guideline proceeding to determine what the guideline should be. I mean, is that what you're saying should be done here? I'm not saying that that's necessarily what should be done in every case. But in Spears v. United States, the Supreme Court said that that's exactly what district courts can do. And in Camper, this court held that that's something that district courts can do. They can actually look at a guideline, examine it, decide whether it serves sentencing purposes in the mine run case. And say, for example, in Camper, it was about the MDMA guideline. If it was originally based on an error, a mistake, they can come up with a better guideline. Assuming all of that's true, isn't that something you need to argue to the district court? In other words, you get back there because of procedural error here. In your brief, in your conclusion, you don't even ask us to send it back because it's substantively unreasonable. You ask us to send it back because the judge didn't consider all these things. So it goes back. You can make your substantive reasonableness argument at the time, can't you? Well, actually, in my briefs, I do say that part of substantive reasonable analysis has to do with whether the district court adequately considered sentencing disparity. But I would like to go back to the point that if we're interested in what this original sentencing was, the defendant in the original sentencing actually made the argument that the judge should disagree with the career offender guideline for all other reasons that I'm making now. But at that time, this president in United States v. Funk said the court couldn't do that. So in a way, that is in the record. It has never been addressed. And if we care about that, then we should be asking the district court to at least have the opportunity to look at this new, evolved information that we have about the guideline under current law. Thank you, Ms. Coffin. Mr. Samuelson. Thank you. May it please the court, my name is Brian Samuelson, and I represent the United States. The denial of Bailey's first step back motion here was both procedurally and substantively reasonable. And I'd like to take those in turn. Starting with procedural reasonableness, here the order, though brief, makes clear what the court considered and how the court weighed it. So it starts by acknowledging Bailey's eligibility for a reduction and correctly states the applicable guidelines range. And then it does three critical things. First, it commends the defendant's post-sentencing conduct with some specificity. He attended drug education classes. He has an incident-free record in custody. And then it notes that he is still a career offender. And third, it explains that his sentence is already at the low end of the applicable guidelines range. After noting those things, it weighs those factors to conclude that a reduction is not appropriate. By doing all those things, that order does everything that this court has required in bolding. It addresses his eligibility. It addresses his applicable guidelines range. And then it tracks several of the 3553A factors and weighs them to conclude that a reduction is not appropriate. Was the judge considering the prior sentencing in any way as part of that analysis? He does not specifically invoke the prior sentencing. That prior sentencing is in the record. The transcript was in the record. And I think that there is a presumption that the district judge is familiar with the records and the facts of the case. And certainly this court, in looking to understand the district court's First Step Act decision, can look to the prior sentencing to see how those 3553A factors apply. What, if anything, is in the record as to the current judge's knowledge of the ability to vary downward from the guidelines? At the original sentencing, it was a different judge, but that judge clearly indicated that he understood he had discretion to vary downwards from the guidelines. What about Funk? How did that apply? Didn't Funk seem to indicate he did not have the ability? No, Your Honor, for two reasons. First, the Funk decision merely held that the district court in that case, in the Funk case, did not adequately explain this decision to vary downward. It was not a bar on varying downward. Okay. So your interpretation is the original sentencing judge understood Funk to say that he had to say more about the 3553 factors in order to vary downward. Yes, Your Honor. And we know that by looking at the sentencing transcript, the original sentencing transcript, the judge says explicitly on the record, I understand that I have discretion to vary downwards from the career offender guidelines range. Okay. So there was no misperception of the law as to the ability to vary downward? No, Your Honor. The original sentencing? No, Your Honor. Let me ask you this. Ms. Coffin, in her 28J letter from July 26, cites the case of the United States v. Ross. How do you distinguish Ross? I mean, Ross, we vacated the district court's order, right, because there was no mention of engaging in a renewed consideration of the 3553A factors, which is what happened here. Yes, Your Honor. And the order in Ross, the part that was explaining the denial of the first step back motion, said simply that the motion to reduce presents no reason to disturb the sentence. There was no effort. Not only did it not mention Section 3553A by name, it did not track any of the 3553A factors or engage in any kind of analysis. Here, by contrast, the court does track the 3553A factors in several ways. It comments on his post-sentencing conduct, which is not only responding to the defendant's argument about post-sentencing conduct, but is relevant to the defendant's personal characteristics and history. It notes that he's a career offender, which is a function, of course, of his criminal history. And it notes that Mr. Bailey was sentenced at the low end of the guidelines range and that his sentence remains at the low end of the guidelines range. But what about, though, Ms. Coffin's point that it turns out that three-fourths of the sentencings go below the very downward from the guideline range in cases like this? Well, Your Honor, with respect, I don't think that's the best reading of the Sentencing Commission's statistics. Mr. Bailey was not in line for a government-sponsored departure or variance. And to compare like with like, we have to compare how many defendants, career offenders, get within-range sentences and how many get non-government-sponsored below-range sentences. And the Commission data says that career offenders are just about as likely to get within-range sentences as non-government-sponsored below-range sentences. So Mr. Bailey's sentence, the bottom of the guideline sentence, was certainly in the mainstream of sentences that career offenders are getting. The problem is, I suppose, that we just don't know for sure what Judge Varlin considered or not among all of the possibilities of 3553A because all we have is this one little paragraph, right? And maybe the real question is, procedurally, is that an adequate explanation to where we should affirm? Or is it not an adequate explanation where we should vacate and remand for further consideration? Your Honor, I agree. That is the question. The order, though brief, I think contains enough analysis to establish that he was thinking of the 3553A factors. I think this compares, this is quite similar to the orders in Smithers and Boyd, which were brief but sufficient. And it compares quite favorably to the form orders that this Court and the Supreme Court has said are sufficient in Chavez-Mesa and in Lacanto-Smith. So I think this Court's precedent shows that the district court did everything it was required to do to be procedurally reasonable. Yeah. I guess so many of these are unpublished opinions, aren't they? We don't really have a binding precedent that tells us precisely how much consideration has to be expressed by the district court. Well, Your Honor, Smithers was a published case that dealt with a, it was not a form order, it was a brief order that this Court found sufficient. Lacanto-Smith was a published case that was a, it evaluated a form order and found just a brief checkmark was sufficient in the right circumstances. And, of course, Chavez-Mesa was a Supreme Court case in which that court affirmed the use of a form order. And I think there's much more detail here than in a form order. So I do think there is binding precedent that shows that this was a procedurally reasonable order. Counsel, do you have anything else? No, Your Honor. With that, I would rest on my brief. Thank you. Ms. Coffin. So how do you distinguish these other cases where we upheld form orders? So if we're talking about Smithers, that's the published decision that was mentioned. Smithers is different. In that case, the district court actually reiterated the defendant's criminal history. It went through it, talked about it. It recited the 3553A factors. The court said that the defendant in Smithers offered few reasons why more in-depth review was appropriate, whereas Mr. Bailey has offered many reasons why more in-depth review would be appropriate. The defendant in Smithers did not ask the court to consider his post-sentencing conduct or explain why it matters. That distinguishes Smithers from this case. Chavez-Mesa is very different. In Chavez-Mesa, the defendant actually got a reduction. So in that case, it was a little bit different atmospherics there. It was the same judge who decided the place within the guideline range to impose the reduced sentence. So in that way, it was different. It's not the same here when we're talking about a different judge, and it was a different time. And Funk, actually, was a very chilling decision. It held that the district court could not vary from the career offender guideline to the otherwise applicable guideline range based on policy reasons. It could not disagree with the guideline as a matter of policy. That's what Funk held. And although it said that the district court could vary based on individualized reasons, this holding had a palpable chilling effect on arguments that you could make to disagree with the career offender guideline. In fact, that was why it was such a big deal at the time, and it ended up getting vacated. But our current judge didn't have the misperception from Funk. I mean, Funk had been overruled. So the current sentencing judge had Michael to deal as the law, right? Michael. Michael, the case Michael that held that district courts could – yes, that is true. So there's not really any misperception of the law going on here. With respect to Judge Varlin, this current judge. The current judge. What the law was. Exactly. You're not arguing that he had any misperception of the law. No. The argument is that there wasn't enough written of the judge's consideration of the 3553A factors. Yes. This is a 3553A analysis case. That is unusual in the sense that it's a career offender case. It's an old career offender case. And it's one where it's an extremely long sentence, 360 months, that virtually no person who is deemed a career offender today would get. And speaking of the data, the government, for some reason, wants to sort of take out all government-sponsored variances and departures and then just look at the number or the rate at which people get within range and the rate at which they get non-government-sponsored below-range sentences. But that's not what the commission does when it looks to see whether a guideline has influence. What it does is it takes out government-sponsored substantial assistance departures and then it looks at the rest as a cohort because that's where discretion can be meaningfully assessed. And then it looks to see what the rate is of those people who get a within-range sentence. And when you do that math, and I've done it with the most recent quick facts from the career offender, quick facts that's posted on the commission's website, you still have close to 60 percent of people who get that group who get a below-range sentence. And with that, I will ask the court to vacate the sentence and remand it to the district court to account for the information that we now know about career offender sentences and all the information that was presented to the district court. Thank you very much. Thank you. Thank you, counsel. We will take the case under submission. The clerk may adjourn the court.